NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

---

|  |  |  |
|---|---|---|
| | : | |
| **BERNARD LAUFGAS,** | : | |
| | : | Civil Action No.  04-cv-1697 (PGS) |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | **OPINION** |
| **JERRY SPEZIALE, et al.,** | : | |
| | : | |
| Defendants. | : | |
| | : | |

---

**SHERIDAN,  U.S.D.J.**

I.

   This matter comes before this Court on a motion for summary judgment on all twenty counts of the Complaint filed by plaintiff Bernard Laufgas, pro se.[1]  Basically, plaintiff was sentenced to 120 days in jail for two counts of contempt.  During his time served plaintiff claims a litany of violations of rights arising out of access to the mail, access to the courts, deprivation of a special diet, sanitation, access to the telephone, deprivation of recreational facilities, exposure to secondhand

---

[1]      Defendants' moving papers, however, do not substantially address about 13 counts.  They are:  Count 4 - Ombudsman Abuse, Count 5 - Censorship & Access to Mail, Count 8 - Failure to Provide 2 of 3 Hot Meals, Count 9 - Sanitation, Count 10 - Telephone Access, Count 12 - Deprivation of Recreational Facilities, Count 13 - Deprivation of Bedding, Count 14 - Denial of Shower, Towels, Clean Clothes, Count 15 - Denial of Request for Indigent Form, Count 17 - Disposing of Personal Items, Count 18 - Subjecting to Unwarranted Psychiatric Evaluation, Count 19 - *Respondeat Superior*, and Count 20 - Conspiracy.  At oral argument, defendants argued that a letter from the warden to Mr. Laufgas dated March 21, 2002 addressed all the counts.  The letter, they argue, is sufficient to support the entry of summary judgment. The court disagrees except as stated otherwise in the body of this opinion.  For the most part, the letter is simply a general denial of plaintiff's claims.

smoke, deprivation of bedding, refusal of shower, towels, and clean cloths, refusal of request for indigent forms, forced housing with Muslims and Arabs, disposing of personal items, subjecting plaintiff to an unwarranted psychiatric evaluation, *respondeat superior*, and conspiracy.

Summary judgment is appropriate under Fed. R. Civ. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

"When the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir.1991)). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

Once the moving party has satisfied its initial burden, the party opposing the motion must

establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Lacey Township*, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990); see also Fed. R. Civ. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial"). "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." *Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001).

If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, ...there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322-23).

## II.

In or around 1998, the plaintiff was sentenced to 150 days at the Passaic County Adult Correctional Institution for alleged repeated witness intimidation and improper conduct toward litigants, public officials, judges and lawyers by a judge of the Superior Court of New Jersey. The matter was appealed and heard by the New Jersey Supreme Court which upheld two of the three counts of contempt. See *Amoresano v. Laufgas*, 171 N.J. 532 (2002). On October 16, 2001, while that matter was pending in court, but in anticipation of incarceration, plaintiff forwarded a letter to

the then Sheriff of Passaic County and Warden of the Passaic County Jail. The letter indicated that plaintiff may be housed in their institution, and placed them on notice of certain needs including his doctor's name, medication prescriptions, Kosher and no-salt dietary needs, and need of access to the law library. The plaintiff further stated that if he is denied these "basic Constitutional rights, I assure you, once I get out I will institute legal action...against each of you..." In January, 2002, the newly elected sheriff took office, and the sheriff immediately appointed a new warden.

Subsequent to the Supreme Court's ruling, plaintiff filed a Writ of Habeas Corpus seeking to stay the 120 day sentence. On February 8, 2002, the Honorable William G. Bassler, U.S.M.J. denied the plaintiff's request for a stay, but granted plaintiff's request for an extension of time to oppose the State's cross-motion to dismiss. The court gave plaintiff until February 28, 2002 to respond to the State's cross-motion.

Plaintiff commenced serving his jail sentence on February 8, 2002. Plaintiff was unhappy with his accommodations and over the period of his incarceration, plaintiff filed approximately 150 Ombudsman Request Forms, demanding various personal items, privileges, or other treatment.

In the days following, the plaintiff alleges that his mail was confiscated. More specifically, a friend, on two occasions, attempted to mail documents and supplies (paper and pen) to him in order for plaintiff to oppose the State's cross-motion and draft a reply to the Writ of Habeas Corpus. Evidently, the packages were returned bearing a note that said: "Returned to Sender Items Purchase Here." As a result, plaintiff wrote to Judge Bassler advising that he was unable to submit his brief on account of defendants' refusal to provide access to the law library or writing materials. In light of plaintiff's allegations, the Court, in an Opinion and Order, dated March 4, 2002 granted the plaintiff until March 15, 2002 to file his responding papers, and required the prison officials to

4

provide access to the law library.

Plaintiff claims his responding brief was prepared to be filed on March 14, 2002, so as to be delivered on March 15, 2002.  Plaintiff alleges that defendants refused to mail the brief and the papers were not filed with the Court until 3 days after the plaintiff was released from jail.  However, at oral argument, plaintiff contended that he brought the brief to the warden's office and the warden declined to meet with him, so he brought the brief back to his cell.  Plaintiff filed his brief on April 18, 2002.  On April 23, 2002, Judge Bassler denied the plaintiff's petition for a writ of habeas corpus, granting, in part, the State's cross-motion for failure to state a federal claim upon which relief can be granted. Laufgas appealed, and in June, 2002, the Court denied the plaintiff a certificate of appealability, and thereafter, the Third Circuit, in September, 2002, affirmed Judge Bassler's ruling.

On February 8, 2002, plaintiff commenced a hunger and medication strike on account of the food containing salt and his denial of access to the law library and assistance of a person knowledgeable about the law.  Evidently, the plaintiff states that he is a diabetic and suffers from hypertension and high cholesterol.  As a result, the plaintiff maintains that he cannot tolerate salt, fried foods, milk, eggs, coffee or sugar.  Since defendants failed to provide the plaintiff with his required dietary needs, plaintiff instituted a hunger strike, and refused his medication because it had to be taken with meals.

The plaintiff's Ombudsman Request Forms indicate that plaintiff went on a hunger strike from February 8, 2002 to February 14, 2002.  Plaintiff re-instituted the hunger and medication strike on February 19, 2002, however plaintiff seems to have eaten by February 20, 2002, despite his complaints of cold food.  Another hunger strike began on March 16, 2002.

5

The records suggest that defendants transported the plaintiff to St. Mary's hospital on April 2, 2002 due to the plaintiff's continued hunger and medication strike. The following day he was transported to the Ann Klein Forensic Center until he was discharged and returned to jail on April 12, 2002. Plaintiff was placed on a no-salt diet while at the Ann Klein Forensic Center.

While imprisoned, the plaintiff also made a myriad of complaints. These include (1) housing with smokers (2) housing with Muslims and Arabs, (3) sanitation conditions concerning his bed, showering and clothing, (4) failure to provide daily one hour of physical exercise and recreation outside of the housing unit, (5) refusal to honor the plaintiff's pre-paid calling card, (6) the refusal of internal affairs to investigate the plaintiff's numerous complaints, (7) missing personal property, and (8) involuntary commitment at the hospital.

Plaintiff appears to have been release from jail on April 14, 2002.

III.

One of the chief arguments of Passaic County defendants is that plaintiff must have a medical expert to substantiate his medical and dietary claims. In addition, defendants argue that all the dietary claims are essentially claims of medical malpractice, and plaintiff was required to produce an affidavit of merit at the outset of the case. (*N.J.S.A.* 2A:52A-27). See generally, *Ferreira v. Rancocas Orthopedic Assocs.*, 178 N.J. 144, 146 (2003); see also *Miladys Familia v. University Hosp. of the Univ. of Med.*, 350 N.J.Super. 563, 569 (App. Div. 2002).

Admittedly, plaintiff's complaint is unwieldy; but it does not expressly make out a claim for medical malpractice against the Passaic County defendants.[2] Basically, the Complaint asserts a

_____

[2]      Motions for summary judgment claims of malpractice by St. Mary's Hospital and staff and others are not presently before this court.

6

§1983 claim. Those claims arise out of plaintiff's Eighth and Fourteenth Amendment rights. With regard to civic rights actions, the law is clear. "[C]ompliance with the affidavit of merit statute is not a prerequisite for a federal civil rights action against a doctor who is deliberately indifferent to his or her patient's medical needs." *Seeward v. Integrity, Inc.*, 357 N.J. Super. 474 (App. Div. 2003).

Plaintiff argues that the common knowledge exception should apply and that the affidavit is unnecessary. Basically, plaintiff argues that his medical conditions required a special medical dietary need which is within the common knowledge of the average juror (i.e. hypertension requires low salt diet). "Where the jurors' common knowledge as lay persons is sufficient to enable them, using ordinary understanding and experience, to determine a defendant's negligence without the benefit of the specialized knowledge of experts, the jury itself is allowed to supply the applicable standard of care and thus to obviate the necessity for expert testimony relative thereto." *Natale v. Camden County Correctional Facility*, 318 F.3d 575, 579 (3d Cir. 2003) (quoting *Estate of Chin v. Saint Barnabas Med. Ctr.*, 160 N.J. 454, 469-470, 734 A.2d 778, 785 (1999), *Rosenberg v. Cahill*, 99 N.J. 318 (1985)). The factual predicate for a common knowledge case is one where "the carelessness of the defendant is readily apparent to anyone of average intelligence and ordinary experience." *Id.* In this case, the final pretrial order does not list any medical professional who will give expert testimony; however, plaintiff does list his treating physician as a fact witness.

Prison systems have a duty to provide prisoners with adequate medical care, *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), and "[t]he Eighth Amendment proscribes deliberate indifference to prisoners' serious medical needs." *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004); *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003). To establish a violation of his or her Eighth Amendment right to adequate medical care, an inmate "must show (i) a serious medical

need, and (ii) acts or omissions by prison officials that indicated deliberate indifference to that need." *Id.*; *Jackson v. Fauver*, 334 F.Supp.2d 697, 706 (D.N.J. 2004).  A serious medical need is a need diagnosed by a physician, that the physician believes to require medical treatment, or a need that is "so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Jackson v. Fauver*, 334 F.Supp.2d at 706 (quoting *Monmouth County Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir.1987)).

Finding a prison official was deliberately indifferent requires a showing that the official "knew of and disregarded an excessive risk to [the] inmate['s] health." *Natale v. Camden County Corr. Facility*, 318 F.3d at 582 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).  A plaintiff must "present enough evidence to support the inference that the defendants knowingly and unreasonably disregarded an objectively intolerable risk of harm." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 132 (3d. Cir. 2001); *Heggenmiller v. Edna Mahan Corr. Inst. for Women*, 2005 WL 826070, slip copy at 1 (3d Cir. 2005).  Deliberate indifference has been found in situations where "necessary medical treatment is delayed for non-medical reasons," or where objective evidence established that a prisoner had a serious need for medical care and the official ignored that evidence. *Natale v. Camden*, 318 F.3d at 582 (citations omitted).  Allegations of negligence, medical malpractice and mere disagreement as to the proper medical treatment are not sufficient to establish an Eighth Amendment violation. *Jackson v. Fauver*, 334 F.Supp.2d at 706, 710; *Spruill v. Gillis*, 372 F.3d at 235; *Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir. 1993).

Prior to the plaintiff reporting to the correctional facility, plaintiff informed both the sheriff and warden of his alleged medical conditions, medications, and diet requirements.  It has been held that a detainee deprived of medical care stated a claim for violation of civil rights under § 1983, even

if the period of detention was brief, in view of evidence that prison officials were aware of the detainee's need for prescription medication and a special diet.  *Gerakaris v. Champagne*, 913 F.Supp. 646 (D. Mass. 1996).  Whether an inmate has a legitimate, medically prescribed diet is a question wholly within the province of the prison administration. *Jefferson v. Douglas*, 493 F.Supp. 13 (W.D.Ok. 1979).   The Passaic County Jail Inmate Handbook provides that "[m]edical dietary restrictions shall be accommodated by making special diets available [].  Provisions for special diets shall be made as prescribed by the facility's physician and/or dentist."  While the plaintiff's claim may be suspect, defendants do not make an adequate showing to dismiss the plaintiff's claim for deprivation of a special diet.[3]

IV.

The U.S. Supreme Court has held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817 (1977) at 828.   However, to bring a successful claim, a plaintiff or prisoner must allege that he sustained an "actual injury" as a result of the denial of this right.   "[A]n inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense."  *Lewis v. Casey*, 518 U.S. 343, 351, 116 S.Ct. 2174 (1996).  The plaintiff must demonstrate the shortcoming of the legal assistance or law library hindered his efforts to pursue a legal claim.  *Id.*  Furthermore, the "injury requirement is not satisfied by just any type of frustrated legal claim."  *Id.* at 354.  The "actual

---

[3]     Defendants' defense is that they served the plaintiff with food containing 700 mg of sodium and plaintiff did not have a negative reaction.

injury" requirement must relate to the plaintiff's inability to attack his sentence or challenge the conditions of his confinement.  "Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.* at 355.

Here, plaintiff was attempting to respond to the State's cross-motion to dismiss his petition for a writ of habeas corpus and reply in support of his petition.  The record is not clear as to when the plaintiff's responding papers were actually filed with the Court.[4]  While defendants maintain that the papers were filed on March 18, 2002, another stamp, as well as the PACER docket sheet, suggests that the brief was not filed until April 18, 2002.

Considering that a successful claim for denial of access to the court would require the plaintiff to establish that he sustained an "actual injury" as a result of the denial of this right, a review of Judge Bassler's April 23, 2002 opinion and plaintiff's opposition/reply brief makes clear that plaintiff cannot sustain his burden.  Actual injury can be demonstrated by showing that defendants' actions resulted in the "loss or rejection of a legal claim." *Oliver v. Fauver*, 118 F.3d 175, 177 (3d Cir.1997).  Plaintiff's submission, entitled, "Letter-brief in lieu of a more formal brief in support of plaintiff's writ of habeas corpus application," was devoted entirely to plaintiff's complaints with regard to the law library, mail access, and telephone access.  At no point in plaintiff's brief does plaintiff address the State's cross-motion to dismiss for failure to exhaust available state remedies,

---

[4]     A review of the April 23, 2002 opinion of Judge Bassler does not make clear whether the court accepted and considered the plaintiff's brief in denying the petition for a writ of habeas corpus.  The opinion does note that "the Court has not received any formal opposition papers from Laufgas.  Because this matter was placed on an expedited schedule due to the 120-day length of Laufgas' contempt sentence, the Court is constrained to rule on the State's motion as unopposed."  A review of plaintiff's submission, however, suggests that plaintiff's filing was not an opposition to the State's motion, but rather a letter brief in further support of his habeas petition

procedural default, and failure to state a federal claim upon which relief may be granted.  Moreover, after being released, plaintiff timely appealed Judge Bassler's decision.  On June 12, 2002, Judge Bassler declined to issue a certificate of appealability, finding that "Laufgas' petition failed to present cognizable claims of a federal constitutional deprivation and that his due process claims wholly lacked merit."  Thereafter, in an order filed September 30, 2002, the Third Circuit denied the appellant's request for a certificate of appealability finding that his release from custody rendered his habeas corpus petition moot.

Judge Bassler granted the State's motion to dismiss for failure to state a federal claim and determined that the petition should be dismissed on the merits pursuant to 28 U.S.C. §2254(b)(2).

Therefore, the question becomes whether the plaintiff can show an actual injury in connection with his inability to access the law library, the failure to obtain his mail, and censorship of mail as they relate to his right to access to the courts.[5]  It is clear from the plaintiff's attempted submission that it would in no way have altered the Court's decision because the Court was already well aware of the complaints asserted therein.  As recounted in the opinion of the Court, four days after the plaintiff reported to the Passaic County Jail, on February 12, 2002, the Court received a letter from Curtis S. Berkhimer, on behalf of the plaintiff, but not acting as his counsel, advising the Court that the plaintiff had been denied access to the law library.  On February 22, 2002, the Court noted that the plaintiff wrote a letter to the Court indicating that he had embarked on a hunger and medication strike until such time as he is provided access to the law library and the assistance of a person

---

[5]      At oral argument, plaintiff explained his "censorship" and inability to obtain mail was limited to the paper and pencils being returned to his friend. This, he concluded, deprived him of access to legal materials. As a result, this Court is considering them as one claim for purposes of this matter.

knowledgeable about the law.  The plaintiff also requested in his letter telephone access to the Court and legal supplies necessary to prepare his brief.  This letter prompted the Court to enter an Order, dated March 4, 2002, granting the plaintiff an extension of time, until March 15, 2002, to file his opposition brief and ordering that plaintiff be given access to the law library.  Thereafter, the Court received two more letters from the plaintiff, on March 15, 2002 and March 18, 2002, complaining about the inadequacies of the law library and advising that his opposition brief was completed, but the correctional staff had refused to mail his submission.

Judge Bassler noted in a footnote that while plaintiff's letter "asserts a denial of access to the law library, Laufgas states: 'if the law library is the state of art, I must be the Pope, some book are as late as 1987 [pocket].'  This statement suggests that Mr. Laufgas may not be subject to an outright denial of access, but instead, is not satisfied with the legal materials available."  Furthermore, the plaintiff readily admits in his Complaint that he was granted access to the law library subsequent to Judge Bassler's March 4, 2002 Order (See Complaint, ¶ 81).  The Court was aware of the plaintiff's complaints and rejected them in dismissing the plaintiff's petition with prejudice.

In *Bounds v. Smith*, 430 U.S. 817, inmates incarcerated in a North Carolina state prison facility brought three separate suits under 42 U.S.C. §1983.  The suits were eventually consolidated by the District Court which granted the inmate's motion for summary judgment "finding that the prison's library was 'severely inadequate' and there was no other legal assistance available to inmates." *Id.* at 818. The Court of Appeals for the Fourth Circuit affirmed the district court's ruling. Justice Marshall, writing for the majority found that:

> the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in

the law.

*Id.* at 828.

The *Bounds* decision was clarified by the Third Circuit in *Rhodes v. Robinson*, 612 F.2d 766 (3d Cir. 1979).  In that case, suit was brought by an inmate in a Pennsylvania prison who claimed that prison officials interfered with his access to the courts by discarding eleven volumes from the prison library.  The state contended that the discarded volumes were out-of-date advance sheets and supplementary pamphlets.  The Third Circuit in applying *Bounds* finding that:

> the focus should not be on the volumes that were discarded but on the volumes that remain in the library, or, in the absence of an adequate law library, on the sufficiency of alternative legal assistance.

*Id.* at 771.  The court went on to find that since the plaintiff had not alleged any facts regarding the sufficiency of the library's collection, that the district court had properly dismissed the claim.

The plaintiff has provided to the Court nothing beyond the mere, bald allegation that the law library is inadequate.  Plaintiff presents nothing in his Complaint or motion papers to support this claim.  These bare allegations, standing alone, are insufficient to withstand a motion for summary judgment on his claim for denial of access to the courts.  Accordingly, Counts 5 and 6 of the Complaint are dismissed with prejudice.

## V.

The U.S. Supreme Court  has ruled that a cause of action under the Eighth Amendment exists when a prisoner alleges that prison officials have exposed him, with deliberate indifference, to levels of environmental tobacco smoke (ETS), or secondhand smoke, that pose an unreasonable risk of harm to his future health. *Helling v. McKinney*, 509 U.S. 25 (1993). To prove its claim, a plaintiff must satisfy the two prong test set forth in *Helling*.  The first prong, which is objective, requires the

plaintiff to show that he was exposed to unreasonably high levels of ETS.  The second prong, which is subjective, requires the plaintiff to demonstrate that the prison officials were deliberately indifferent to a serious risk of harm.

In support of his claim, the plaintiff maintains that he complained of being housed with smokers on eight (8) occasions in February and March.

Defendants point to the fact that plaintiff has presented no expert testimony and points only to his allegations to support the required objective test that the exposure posed an unreasonable risk. Additionally, defendants assert that plaintiff cannot satisfy the subjective prong because the prison was, at that very time, in the process of remedying the plaintiff's concerns.  On January 25, 2002, the facility issued a memorandum indicating that the facility would become smoke-free as of June 1, 2002.  To accomplish this, the sale of cigarettes was to be reduced beginning on March 1, 2002 and ultimately stopped.  This transition was ongoing during plaintiff's 65 day incarceration.

Plaintiff has failed to demonstrate the objective prong of the test and show that he was exposed to an unreasonable risk; and the remedial efforts are sufficient to refute the plaintiff's claims of deliberate indifference. Accordingly, Count 11 of the Complaint is dismissed.

VI.

The plaintiff maintains that as an individual of Jewish decent, the defendants violated his constitutional rights by housing him with detainees from Arab countries and individuals of the Muslim faith, especially in the shadow of the events of September 11, 2001.   It is claimed that the Eighth Amendment requires separate and adequate non-Muslim housing, in light of the plaintiff's subjective belief that inmates of such background are harmful and harbor hatred toward Jews and Israelis.

14

Courts dealing with racial segregation have found that such measures, for the limited purpose of avoiding imminent prison violence, are at the discretion of prison authorities. *Rentfrow v. Carter*, 296 F.Supp. 301 (N.D.Ga. 1968). "[P]rison authorities have the right, acting in good faith and in particularized circumstances, to take into account racial tensions in maintaining security, discipline, and good order in prisons and jails." *Johnson v. California*, 543 U.S. 499, 507 (2005) (quoting *Lee v. Washington*, 390 U.S. 333, 334, 88 S. Ct. 994 (1968)).

Typically, a litigant brings a claim under the Fourteenth Amendment right to equal protection for a prison's unlawful segregation policies. Such an inquiry would require a detailed strict scrutiny analysis. See *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 227, 115 S.Ct. 2097 (1995) ("[A]ll racial classifications [imposed by government]...must be analyzed by a reviewing court under strict scrutiny."). Here, plaintiff actually seeks segregation based on his belief that certain individuals of another faith hold him in contempt or harbor feelings of hatred towards him because of his religion.

In *McClelland v. Sigler*, 456 F.2d 1266 (8th Cir. 1972), two inmates of the Nebraska Penal and Corrections Complex objected to the housing facilities which were integrated, except for one cell house which housed 50 Caucasian inmates who objected to living with African-American inmates. The facility justified the limited segregation policy on the ground that it is needed to maintain order. While the court was reluctant to interfere with the operation of correctional institutions, the court refused to allow the policy which, in effect, rewarded certain inmates for their intransigent racial attitudes which could not be legally sanctioned. The court held that it was "incumbent upon the officials in charge to make other provisions for housing those who would commit assaults or aggravations on other inmates...and thus only penalize those guilty of offending the personal and constitutional rights of others." *Id.* at 1267.

15

Notwithstanding the plaintiff's claims that he was "afraid," there is no rational basis for plaintiff's perception.  Plaintiff's subjective beliefs do not warrant a facility to undertake to segregate based on religion, which would violate the Eighth Amendment and the equal protection rights of inmates.  Accordingly, Count 16 is dismissed with prejudice.

## VII.

A federal court may dismiss a plaintiff's complaint, *sua sponte*, when the allegations of the complaint are attenuated, insubstantial, frivolous, devoid of merit, and/or no longer open to discussion.  *Hagans v. Lavine*, 415 U.S. 528, 536-37 (1974); see also *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89 (1998).  Thus, the Court clearly has the inherent power to grant a dismissal based on the legal insufficiency of a claim, and may exercise this power on its own initiative. See *Meritcare Inc. v. St. Paul Mercury Ins. Co.*, 166 F.3d 214, 217 (3d Cir.1999); *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F .2d 1406, 1408-09 (3d Cir.1991) (dismissal is proper when the claim clearly appears to be either immaterial and solely for the purpose of obtaining jurisdiction, or is wholly insubstantial and frivolous) (quoting *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666-67 (1974) (some federal questions are so "insubstantial, implausible, foreclosed by prior decisions of [the Supreme] Court, or otherwise completely devoid of merit as not to involve a federal controversy within the jurisdiction of the District Court...")).

In light of defendants' failure to substantively address all of the counts set forth in plaintiff's Complaint, the Court is compelled to exercise its authority and dismiss certain claims which are frivolous and/or have no basis in law.

Simply put, plaintiff does not have a constitutional entitlement to hot meals. See *Brown-El v. Delo*, 969 F.2d 644, 648 (8th Cir.1992)(holding that prisoner's constitutional rights were not

violated when he was served cold food).  Plaintiff maintains that the facility's handbook makes clear that prisoners will be provided two of three hot meals a day.  However, a prison's departure from the policies and procedures outlined in the facility's handbook does not, in and of itself, amount to a constitutional violation actionable under §1983.

Prisoners are guaranteed a nutritionally adequate diet. See *Wilson v. Seiter*, 501 U.S. 294, 303, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).  The provision of cold food is not, by itself, a violation of the Eighth Amendment as long as it is nutritionally adequate and is "prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." *Brown v. Detella*, 1995 U.S. Dist. Lexis 13260, *8 (N.D.Ill. Sept. 7, 1995) (citing *Ramos v. Lamm*, 639 F.2d 559, 571 (10th Cir.1980), cert. denied, 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981)).  See also *Fisher v. Barbieri*, 3:95CV913 (D.Conn. May 19, 1999) (no violation where prisoners were denied hot meals during the course of twenty eight day lockdown); *Hoitt v. Vitek*, 497 F.2d 598, 601 (1st Cir.1974) (prisoners' allegations concerning denial of hot meals failed to state cognizable claim of cruel and unusual punishment, given that prisoners were otherwise adequately fed); *Gawloski v. Dallman*, 803 F.Supp. 103, 111-12 (S.D.Ohio W.D.1992) (holding that inmate's allegation that prison officials failed to provide hot meals "did not constitute cruel and unusual punishment absent some indication that [the inmate] received less than one meal per day or that the meals lacked nutritional value or were in some way physically harmful to [the inmate's] health").

Based on the facts presented to the Court and the above authorities, the Court finds that plaintiff did not suffer a sufficiently serious deprivation of his rights because there is no allegation that plaintiff did not receive nutritionally adequate meals.  Thus, plaintiff's Eighth Amendment claim

based on the failure to provide two hot meals a day, as stated in the facility's handbook, must fail. Accordingly, Count 8 is dismissed.

VIII.

Plaintiff has claimed that prison officials disposed of his personal property. However, plaintiff has available to him the option of filing a common law claim for conversion of property, and as a result cannot maintain a cause of action pursuant to §1983. See *Hudson v. Palmer*, 468 U.S. 517, 535, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *Nicholson v. Carroll*, 390 F.Supp.2d 429, 435 (D.Del.2005); *Acierno v. Preit-Rubin, Inc.*, 199 F.R.D. 157 (D.Del.2001). In *Hudson*, 468 U.S. 517, 533, the United States Supreme Court held that the intentional deprivation of property by state employees does not constitute a civil rights violation as long as the state provides a meaningful post-deprivation remedy. The plaintiff bears the burden of establishing that the post-deprivation remedy afforded to him under state law is inadequate.

Courts have recognized that a common law cause of action for conversion is a sufficient remedy to satisfy constitutional due process requirements. *Murphy v. Collins*, 26 F.3d 541, 543-544 (5th Cir.1994). Because plaintiff has an adequate remedy at state law, plaintiff cannot maintain a cause of action under section 1983 for the alleged intentional deprivation or disposal of his property. See *Alexander v. Gennarini*, 2005 WL 1805621, *1 (3d Cir. Aug. 2, 2005) (affirming district court's dismissal of §1983 claim based on intentional deprivation of property because plaintiff could have filed a state law tort suit for conversion of property).

Accordingly, Count 15 of plaintiff's Complaint is frivolous and is dismissed. See also *Brunner v. Lancaster City Police Department*, 1989 WL 83440, *1 (E.D.Pa. July 18, 1989) (dismissing as frivolous Plaintiff's §1983 claim based on the failure of defendant to return personal

18

property seized from plaintiff when he was arrested); *Ugwonali v. Dallas County District Attorney*, 2003 WL 21911065, *3 (N.D.Tex. Aug. 6, 2003) (dismissing as frivolous claim for intentional deprivation of property because plaintiff has adequate remedy in the form of common law claim of conversion).

## IX.

The plaintiff has also maintained that his constitutional rights were violated when the defendants subjected him to an "unwarranted psychiatric evaluation." While plaintiff is correct in his assertion that a prisoner "possesses a significant liberty interest in avoiding the unwanted administration of" mental health treatment, *Washington v. Harper*, 494 U.S. 210, 221-22, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990), or, for that matter, any other type of medical treatment, *White v. Napoleon*, 897 F.2d 103, 113 (3d Cir.1990), a prisoner's right to refuse such treatment is limited. *Id.* As stated by the Third Circuit, "a prison may compel a prisoner to accept treatment when prison officials, in the exercise of professional judgment, deem it necessary to carry out valid medical or penological objectives." *Id.* The proper inquiry is "whether the regulation [at issue] is reasonably related to legitimate penological interests." *Washington*, 494 U.S. at 223 (internal quotations omitted).

Courts have also analyzed such allegations under the Fourth Amendment to determine whether the state actors had probable cause to believe that the inmate presented an imminent threat of serious bodily harm to either himself or others at the time of the seizure of his person and forced examination. See, e.g., *Doby v. DeCrescenzo*, 171 F.3d 858, 864-65 (3d Cir.1999); *S.P. v. City of Takoma Park*, 134 F.3d 260, 266 (4th Cir.1998); *Ahern v. O'Donnell*, 109 F.3d 809, 817 (1st Cir.1997); *Pino v. Higgs*, 75 F.3d 1461, 1468 (10th Cir.1996).

The Court need not reach these issues here because even assuming that the plaintiff could establish that a constitutional right had been violated, the Supreme Court has explained that the shield of qualified immunity will apply unless the law "put the officer on notice that his conduct would be clearly unlawful." *Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct. 2151 (2001); *see also City of Takoma Park*, 134 F.3d at 266 ("Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines."). Plaintiff has failed to demonstrate to the Court that his indisputably strange behavior, notably his 18 day hunger strike, did not rise to a level justifying an involuntary psychiatric evaluation. Qualified immunity clearly applies in connection with this allegation. *Must v. West Hills Police Dept.*, 126 Fed.Appx. 539 (3d Cir. 2005). Therefore, Count 18 of the plaintiff's Complaint, alleging unwarranted psychiatric evaluation, is dismissed.

## X.

In Count 12 of the Complaint, it is alleged that the plaintiff was deprived of "basic recreational facilities." Indeed, the denial of exercise or recreation can result in a constitutional violation. "[M]eaningful recreation 'is extremely important to the psychological and physical well-being of the inmates.'" *Peterkin v. Jeffes*, 855 F.2d 1021, 1031 (3d Cir.1988) (quoting *Spain v. Procunier*, 600 F.2d 189, 199 (9th Cir.1979)); *see also Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996) ("[d]eprivation of outdoor exercise violates the Eighth Amendment rights of inmates confined to continuous and long-term segregation."); *Patterson v. Mintzes*, 717 F.2d 284, 289 (6th Cir. 1983); *Campbell v. Cauthron*, 623 F.2d 503, 506-07 (8th Cir.1980); *Kirby v. Blackledge*, 530 F.2d 583, 587 (4th Cir.1976); *Loe v. Wilkinson*, 604 F.Supp. 130, 135 (M.D.Pa.1984).

However, the lack of exercise can only rise to a constitutional level "where movement is denied and muscles are allowed to atrophy, [and] the health of the individual is threatened." *Spain*,

600 F.2d at 199.  Thus, a constitutional violation will occur when the deprivation of exercise extends for a prolonged period of time and tangible physical harm resulting from the lack of exercise is demonstrated.

Plaintiff does not allege any harm or injury as a result of this alleged denial of "basic recreational facilities."  Furthermore, in light of plaintiff's short-term confinement, there was no prolonged deprivation of a constitutional magnitude that would suggest that the defendants' action, if true, was intended to punish the plaintiff, or was an exaggerated response to genuine security considerations.  Therefore, this claim is dismissed.

XI.

The plaintiff claims that he was denied telephone access.  This claim is based on allegations that the telephones at the correctional facility did not accept the plaintiff's pre-paid calling cards and, further, that the phone cards sold at the facility's commissary were for international use only.  The Court of Appeals for the Fifth Circuit in *Lopez v. Reyes*, 692 F.2d 15, 17 (5th Cir. 1983), recognized that prisoners enjoy no right to unlimited telephone use.  See also *Benzel v. Grammar*, 869 F.2d 1105, 1110 (8th Cir. 1989)(a prison policy which denied phone privileges to inmates housed in administrative detention did not violate the Constitution since the policy furthered internal security and rehabilitation concerns).

The Court of Appeals for the Third Circuit previously established that in order to assert a viable claim of telephone deprivation, an inmate must make some showing of prejudice or actual injury.  *Peterkin*, 855 F.2d at 1041.  More recent decisions have concluded that where an inmate has available, alternative means of communicating with the outside world, i.e., mail privileges, a §1983 action alleging improper denial of telephone access was subject to dismissal.  *Acosta v. McGrady*,

21

1999 WL 158471 *7 (E.D.Pa.1999)(a prisoner has a constitutional right to use a telephone only if no other reasonable means of communication are available); *Pittsley v. Ricks*, No. 96-CV-0372, 2000 WL 362023 *5 (N.D.N.Y. March 31, 2000); *Ingalls v. Florio*, 968 F.Supp. 193, 203 (D.N.J.1997); *Radhames v. Nash*, 2005 WL 1532978 (M.D.Pa. 2005).

  This is not a case where a prisoner was prohibited from any telephone use.  The phones, even by plaintiff's own admission, were readily accessible.  However, accepting plaintiff's allegations as true, the telecommunication carrier would not accept the plaintiff's pre-paid calling card. Furthermore, according to the plaintiff, while the commissary sold calling cards, the only cards available for sale were international calling cards.  While defendants contend that this is not the case, nothing has been placed before the Court to demonstrate otherwise.  Even if such allegations were true, the admittedly accessible phones could be used to make collect calls.  At oral argument, however, it was made known that the plaintiff's residence had a block on all collect calls, thus preventing plaintiff from making collect calls to his family.

  Nevertheless, the plaintiff was able to communicate by alternative means as evidenced by the letters received by Judge Bassler.  Plaintiff has not demonstrated, or even alleged, an actual injury as required under the case law to state a claim for telephone deprivation.  Therefore, this claim is dismissed as frivolous.

XII.

  In Count 19 of the Complaint, plaintiff makes allegations of *respondeat superior* against superior officers "with authority to prevent and stop" claiming that such individuals "did nothing to prevent the wrong inflict[ed] upon Plaintiff..."  While a supervisory official may be liable even where not directly involved in the constitutional violation, at the very least, the misconduct must be

22

"affirmatively link[ed]" to the action or inaction of the supervisor. *Rizzo v. Goode*, 423 U.S. 362, 371 (1976). "Supervisory liability can be shown in two ways, "either through allegations of personal direction or of actual knowledge and acquiescence." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1478 (3d Cir.1990).

In order to be liable under §1983 as supervisors, individual city or county officials must have "personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir.2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.1988)). A civil rights plaintiff must identify specific acts or omissions of the supervisor that evidence deliberate indifference and persuade the court that there is a "relationship between the 'identified deficiency' and the 'ultimate injury.'" *Brown v. Muhlenberg Township*, 269 F.3d 205, 216 (3d Cir.2001) (quoting *Sample v. Diecks*, 885 F.3d 1099, 1118 (3d Cir.1989)).

The plaintiff directs this count against all the defendants. Being that such a claim requires personal involvement in the alleged wrongdoing and considering that plaintiff has named the alleged wrongdoers in his claims for relief following each count, such an allegation is repetitious. To the extent the plaintiff seeks to hold any of the defendants not named in his claim for relief following each count solely under the theory of *respondeat superior*, such a claims are dismissed as plaintiff has failed to demonstrate the personal involvement of such individuals. Therefore, Count 19 of the Complaint, alleging *respondeat superior*, is dismissed.

XIII.

In Count 20, plaintiff alleges a conspiracy between Passaic County defendants and medical professionals at St. Mary's Hospital. The court has reviewed all the submissions from Mr. Laufgas

23

and has listened to his oral argument for at least 40 minutes.  At no time was any recognizable conspiracy claim set forth.  To prove conspiracy under §1985(3), plaintiff must show (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States. *United Bhd. of Carpenters & Joiners v. Scott*, 463 U.S. 825, 828-29, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983); *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971).

Outside of the fact that prison officials had him admitted to St. Mary's due to his physical condition, there is no proof of an actionable conspiracy.  Accordingly, Count 20 is dismissed with prejudice.

XIV.

The Court notes that plaintiff's allegations under Counts 4 and 15, entitled "Ombudsman Abuse" and "Denial of Request for Indigent Form," respectively, are not separate claims, but allegations encompassed by plaintiff's other claims.

Count 4 alleges that the Ombudsman failed to perform his duties and responsibilities, namely, according to the Passaic County Jail Inmate Handbook, to "serve[] as a liaison between the inmate population and the institution [and assist inmates] with whatever problems or needs [the inmate] may have..." However, accepting plaintiff's allegations as true, the failure of the Ombudsman to perform the tasks of his employment does not amount to a deprivation of a constitutional right.  In fact, each complaint asserted by the plaintiff in connection with the ombudsman is the subject of a separate count, i.e. "access to [the] mail, access to the Law Library and Court Problems, Meal Problems,

Medical mistreatment, [] telephone use, [] housing in a Non-Smoking section, [] proper bedding and mattress, [] Sanitation [], access to Recreational Facilities...” The alleged “Ombudsman Abuse” does not, in and of itself, constitute a deprivation of a constitutional right.  Each of plaintiff allegations of abuse in connection with this count are addressed in his other claims for relief.  Therefore, Count 4, alleging ‘Ombudsman Abuse” is dismissed.

In the same way, plaintiff's allegation that he was denied a request for an indigent form does not constitute a constitutional violation.  According to the Passaic County Jail Inmate Handbook, “[t]o be classified as an indigent inmate, you must have a zero balance in your finance account for 30 days.  Indigent inmates will be given a toothbrush, toothpaste, footwear, comb, 3 stamped envelopes, a pen and/or pencil and several sheets of writing paper per week.  Soap, toilet paper and shaving equipment are provided free of charge to all inmates...”

Thus, plaintiff's claim for a denial of an indigent form does not rise to the level of a constitutional violation.  Deprivation of the essentials provided to indigents may, however, give rise to a proper cause of action.  To the extent plaintiff makes a claim of denial of such basic essentials, such claims are covered in plaintiff's allegations concerning sanitation.

Therefore, Court 15 alleging a denial of plaintiff's request for an indigent form is also dismissed.

In conclusion, Counts 4, 5, 6, 8, 10, 11, 12, 15, 16, 17, 18, 19, and 20 are dismissed with prejudice.

S/ *Peter G. Sheridan*                      

August 31, 2006                             PETER G. SHERIDAN, U.S.D.J.