**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| BERNARD LAUFGAS, | : | Civil Action No. 04-cv-1697 (PGS) |
| Plaintiff, | : |  |
| | : | |
| v. | : | |
| | : | **OPINION** |
| JERRY SPEZIALE, et al., | : | |
| Defendants. | : | |

**SHERIDAN, U.S.D.J.**

I.

This matter comes before this Court on a renewed motion for summary judgment on behalf of St. Mary's Hospital, Hee Young So, M.D., and Librada Lising, M.D. (hereinafter referred to as the "medical defendants"), to dismiss all claims asserted against them by plaintiff Bernard Laufgas, *pro se*. The motion was originally denied without prejudice by the previous motion judge because it was deemed premature. Following argument on a motion for summary judgment and an *in limine* motion with regard to the testimony of a dietician[1], the Court directed the medical defendants to renew their motion. While the previous motion papers focused on the Affidavit of Merit

---

[1] In July, 2006, plaintiff stated at a conference that he intended to call a dietician to testify at trial. Thereafter, Plaintiff identified the dietician and her background, but failed to provide a report as directed by the Court. Upon a motion by all defendants, this Court barred the dietician's testimony because the dietician was not named in the final pretrial order and no report was provided. Fed. R. Civ. P. 16(e), Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The dietician's testimony was in no way related to the claims against the medical defendants that are presented herein.

requirements under *N.J.S.A.* 2A:53A-27, the instant motion speaks to the plaintiff's failure to present evidence, in the form of an expert report and/or testimony, of a deviation from recognized standards of medical care. While these arguments are interrelated, they argue different legal points. Both arguments are considered herein.

II.

The record reflects that plaintiff instituted hunger and medication strikes on several occasions on account of the food containing salt and his denial of access to the law library and assistance of a person knowledgeable about the law. In the course of one such strike, which apparently spanned from March 16, 2002 through April 2, 2002, the correctional facility transported the plaintiff to St. Mary's Hospital. Plaintiff remained at St. Mary's Hospital for approximately 20 hours. The following day he was transported to the Ann Klein Forensic Center for psychiatric evaluation and he remained there until he was discharged and returned to jail on April 12, 2002.

In plaintiff's Complaint, it is alleged that plaintiff objected to certain medical treatment, including taking blood, x-rays and the performance of a psychiatric evaluation. In a previous opinion, this Court held that the non-medical defendants, including the facility, corrections officers, and warden, were entitled to qualified immunity for transporting plaintiff to St. Mary's Hospital and the Ann Klien Forensic Center as plaintiff had failed to demonstrate to the Court that his indisputably strange behavior, notably his 18 day hunger strike, did not rise to a level justifying an involuntary medical and psychiatric evaluation. *Laufgas v. Speziale*, 2006 WL 2528009 (D.N.J. 2006)(citing *Must v. West Hills Police Dept.*, 126 Fed.Appx. 539 (3d Cir. 2005)).

As qualified immunity does not extend to these defendants, the medical defendants maintain that "[i]t is beyond the purview of the average juror to know the standards of a psychiatric commitment as well as the standard of care of treating a hypertensive, diabetic individual who was

exhibiting psychotic episodes following a hunger and medicine strike."

III.

Our Courts have recognized that a prisoner "possesses a significant liberty interest in avoiding the unwanted administration of" mental health treatment, *Washington v. Harper*, 494 U.S. 210, 221-22, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990), or, for that matter, any other type of medical treatment, *White v. Napoleon*, 897 F.2d 103, 113 (3d Cir.1990). Furthermore, the United States Supreme Court and the Third Circuit have acknowledged a mentally ill patient's right to refuse antipsychotic drugs. *Youngberg v. Romeo*, 457 U.S. 307, 102 S. Ct. 2452, 73 L. Ed. 2d 28 (1982); *Rennie v. Klein*, 720 F.2d 266 (3d Cir. 1983).

The standard by which a mentally ill patient who has been committed involuntarily has a constitutional right to refuse antipsychotic drugs is measured by whether the patient constitutes a danger to himself or to others. *Rennie*, 720 F.2d at 269. "Because that evaluation must be the product of the medical authorities' professional judgment, such a judgment and the resulting decision to administer medication will be presumed valid unless it is shown to be a 'substantial departure from accepted professional judgment, practice or standards.'" *Id.* (quoting *Youngberg*, 457 U.S. at 323, 102 S.Ct. at 2462).

In this case, plaintiff was never forced to take antipsychotic drugs, as his evaluation found such treatment to be unnecessary. Therefore, while *Rennie* provides that the evaluation, judgment, and decision to administer medication must be a product of the medical authorities' professional judgment, it may be deduced that the decision to undertake such an evaluation, against the will of a possible psychotic patient requires the medical authorities' professional judgment as well. Thus, in order to show otherwise, plaintiff is required to demonstrate a substantial departure from accepted professional judgment, practice or standards through the use of an expert.

IV.

Pursuant to *N.J.S.A.* 2A:53A-27, in any action for damages resulting from an alleged act of

malpractice or negligence by a licensed person in his profession or occupation, a claimant:

> *shall*, within 60 days following the date of filing of the answer to the complaint by
> the defendant, provide each defendant with an affidavit of an appropriate licensed
> person that there exists a reasonable probability that the care, skill or knowledge
> exercised or exhibited in the treatment, practice or work that is subject of the [claim],
> fell outside acceptable professional or occupational standards or treatment practices.

*N.J.S.A.* 2A:53A-27 (Emphasis added).

The requirements of a claimant in a professional negligence case under the statutory language

are clear. The claimant must serve on the defendant an Affidavit of Merit within sixty (60) days of

the filing of the Answer, unless that time period is extended for an additional period of sixty (60)

days upon a showing of good cause or exceptional circumstances. *N.J.S.A.* 2A:53A-27. Importantly,

the Affidavit of Merit must be provided, under any circumstances, no later than 120 days after the

filing of the defendants' Answer to the malpractice complaint. *Ferreira v. Rancocas Orthopedic*

*Assocs.*, 178 N.J. 144, 146 (2003); see also *Miladys Familia v. University Hosp. of the Univ. of Med.*,

350 N.J.Super. 563, 569 (App.Div. 2002)(finding that the concern of the Legislature was to set an

outer time limit of one hundred twenty days, beyond which no extension could be granted). The

New Jersey Supreme Court held that the failure to serve the defendant with an Affidavit of Merit

within the time period required by the statute shall be deemed a failure to state a cause of action.

*Alan J. Cornblatt, P.A. v. Barow*, 153 N.J. 218, 244 (1998).

Here, plaintiff has not served an Affidavit of Merit, failing to comply with the requirements

of *N.J.S.A.* 2A:53A-27 and thus, failing to state a cause of action against the medical defendants.

V.

Even if the Court were to excuse the plaintiff from the procedural misstep of failing to serve

an Affidavit of Merit, plaintiff's claims against these defendants still cannot proceed. Despite plaintiff's claims in his opposition brief, plaintiff has not named expert witnesses, but rather treating physicians. Because the negligence in a medical malpractice action encompasses matters not within the ordinary knowledge and experience of lay persons, New Jersey law generally requires that a medical expert testify with a reasonable degree of medical certainty that the acts in question deviated from acceptable medical standards, and that such deviation caused the harm suffered. See *N.J.S.A.* 2A:53A-27; *Hubbard v. Reed*, 774 A.2d 495, 499 (N.J.2001); *Ayala v. Terhune*, 2006 WL 2355153 (3d Cir. 2006). The Court agrees with the medical defendants that "[i]t is beyond the purview of the average juror to know the standards of a psychiatric commitment as well as the standard of care of treating a hypertensive, diabetic individual who was exhibiting psychotic episodes following a hunger and medicine strike." Plaintiff has failed to produce the required affidavit of an expert or an expert report and, thus, he did not establish a claim for medical malpractice under New Jersey law.[2]

Summary judgment is therefore granted, dismissing all claims against the medical defendants.

September 26, 2006

Peter M Sheridan

PETER G. SHERIDAN, U.S.D.J.

---

[2] The medical defendants may also be entitled to absolute immunity under *N.J.S.A.* 30:4-27.7, concerning involuntary civil commitment, which provides that a "screening service or short-term care facility designated staff person or their respective employers, acting in good faith pursuant to this act who takes reasonable steps to assess, take custody of, detain or transport an individual for the purposes of mental health assessment or treatment is immune from civil and criminal liability." However defendants do not raise this issue nor do they provide evidence that St. Mary's Hospital is a designated screening service or short-term care facility. Thus, it is not considered by the Court.